Good morning, your honors. May it please the court, Ron McCarrom on behalf of the plaintiffs and the appellants. From the very start, Judge Walter in the district court did not allow this class to become certified. Upon providing the defendants with a 30-day extension to answer, he did not allow any extension of the plaintiff's 90-day limit to file a motion for class certification, thus only allowing the general counsel of Oberon to be deposed in a very short deposition. And then upon submitting the evidence, did not allow that evidence that was submitted under seal to be considered as a part of the record. Then taking the hearing off calendar, he denied the motion for certification on all seven classes. I'd like to address just four of the arguments that were raised in the appellant's brief. The first, the fact that New York general business law was not applicable to any of the class members outside the state of New York. In the contract itself, the terms and conditions, it requires that all members who sign up for the GameSaver member, they must comply, they must be governed by New York law, the laws of New York, and they must agree the personal and exclusive jurisdiction is New York. Secondly, with regard to New York law, Oberon is located in New York. The inquiries that GameSaver members call into are in New York. The authorizations and the payments are conducted in New York. All those things occurring in New York, New York law should apply to those members who use the GameSaver membership. Just because something is done on the internet from a different state doesn't mean that the laws of New York, those laws that govern deceptive and illegal practices should not allow those companies who utilize that to be governed. Secondly, I'd like to address the foreign transaction fee, which was located in every single membership's term and condition. In other words, every GameSaver member who signed up for this GameSaver program was charged a foreign transaction fee or, excuse me, was not told they'd be charged a foreign transaction fee. Do you know if Oberon charged or the credit card company charged the fee? We don't know that in every single instance they were charged a fee. We only know that in every single instance they were not told they were going to be charged a fee. Isn't that possibly a function of the credit card company? Yes, it may be a process of the bank itself or the credit card company. And does it also depend on whether Oberon's game was called upon directly or through a some other Internet company? No, Your Honor, it does not depend on that. In fact, the Oberon game site itself has a warning that there may be a non-border transaction. It doesn't explain that there may be a transaction associated with that. Now, the district courts does contend that there's language like that in different websites, but the language is different. The failure to disclose is the same. But the Oberon site itself does require a federal transaction, foreign transaction fee to be levied upon it. It does, I guess, depend if you're living in the country of Cyprus, perhaps it's not a non-border transaction. But for the most part, if you're living outside the transaction's location, that being Cyprus, it's presumed, at least by the facts, that you will be charged this foreign transaction fee. There is no evidence of that one way or the other. And we're not here to determine which members were actually charged this fee. We're here to say that the failure to disclose is the illegal or the deceptive practice itself. Similarly to a wage and hour claim, when all of the employees are not paid overtime, when all of them are based on a company-wide policy that this company will not pay for overtime, a failure to disclose a foreign transaction fee is similar in that you're not trying to determine which employees actually were not paid overtime or which employees actually did work overtime. The point is that the class members are the same in that they all were We know who the game saver members are. All of those members are governed by the same failure to disclose, the foreign transaction fee. So if we make the determination, there's no ruling by the district court that there was a failure for ascertainability for the foreign transaction fee. There's no ruling that there was an adequacy or typicality failure on the foreign transaction fee. That's class number five. The only basis that the district court determines that the foreign transaction fee was not a proper class was that it didn't have a set of facts or law that predominates. But we know the facts reveal that the general counsel who was deposed, the minimal amount of discovery that was obtained in this case determined as was presented to the district court that nowhere at no time did Oberon ever disclose that there would be a foreign transaction fee to the members. And in fact, 85 complaints were submitted to Oberon stating that we are charged this foreign transaction fee. So we know at least of those complaints that were told to us by Oberon in the course of the minimal amount of discovery that we had. The second point that I'd like to raise, the third point that I'd like to raise is that the district court had a standard which almost required us to identify the exact individuals within the GameSaver member community who suffered the particular damage that was alleged. That is not the standard in a consumer class action of our nature. The standard is that we have to identify those members of the public who have a potential right to recover. You have seven classes. Almost by definition, you're saying that each class is different from the other. So that there are no common questions that pervade all classes. The common questions are unique to each class. The typicality is unique to each class. And the difficulties in administering a class action when you have seven classes with lots of definitional problems where each one fits and how each one will recover, if at all, I think are overwhelming. I wouldn't know how to administer a class of this nature. It is so complicated in the way it's set out. How do you know we have different foreign transaction fees and the banks are charging them if it's a problem with a bank or it's a problem with a company? How do you know if you are getting a monthly game whether you wanted a game or not wanted a game or wanted two games or wanted three games? How do you know if people are signed up in error? Some people decide to sign, some people don't decide to sign. It's impossible to administer this class. Notice, ascertainability primarily is for the purposes of notice. Who do we send this notice claim out? So in answering your question, Your Honor, we know who the game saver members are. We have a distinct list of those people through Oberon. I assume you can find out from the company, but you can't find out from the company which are the classes. You have to send a different notice for each class. What you want is an opt-in requirement. Rule 23 provides for an opt-out requirement. If you don't respond at all, you're in the class. Which class? 1, 2, 3, 4, 5, 6, 7? How do you know? Yes, Your Honor. Well, the complaints that were lodged with regard to class number 1 are 3,464. You've got a lot more people than people who have made complaints. Remember, if you don't do anything, you're in. How do you know where you're in? Which one? Well, the discovery that is necessary is not to be determined at the beginning of the class action certification. You can't discover the absent class members. You don't know where anybody fits here. Well, we'll take the automatic renewal class, Your Honor. That would be class number 6. We know that any member who was on for more than that period of time, let's say it was a 12-month subscription, any member who was on for more than 12 months, 13, and we had one of the plaintiffs, Ms. McGregor, who was on for 13 months, and not only that, we knew from an email complaint that she sent to Oberon that she didn't want to be in this 12-month subscription. Regardless, she was in for 13 months because she automatically renewed at Her membership should have stopped at 12 months. So any member who doesn't re-subscribe after their membership time frame is up is in the automatic renewal class. That would be a situation where we can not only identify the game saver member, but we can identify the actual damage that that individual game saver member suffered. Further, with the class 5, the foreign transaction fee, we know that they're charged a minimal amount every single month. So all we have to do is total all the game saver members in the totality of the company and multiply that by the number of months that they signed up for a given game. With respect to the foreign transaction fees, did the disclosures differ depending on the game and depending upon the time at which the member signed up? Your Honor, the disclosure of a foreign transaction fee did not differ in the sense that there never was a disclosure. Wording of the fact that there is a cross-border transaction did differ, but there was never a disclosure of a foreign transaction fee. So in the sense that while there was a discussion of a cross-border transaction, the game saver member who signs up doesn't understand that a cross-border transaction in essence means that your credit card is about to charge you a minimal fee. What if the disclosure is that the transaction may be processed through a non-U.S. bank? That also is not a sufficient disclosure for a game saver member to understand that you are going to be charged a transaction fee at every month of your subscription. The fact that you are being charged through a bank that's not yours should not be enough information. One thing we knew, Oberon knew that there was a foreign transaction fee. They could have disclosed that the fact that a bank that's not yours is going to be a part of this transaction or a cross-border transaction is occurring will require you to pay a foreign transaction fee. That would be the proper disclosure. Getting to the last point, adequacy of the class representatives. Ms. McGregor, we talked about, was on for 13 months. She was a proper class representative of class 6 and class 7. With regard to those particular classes, Judge Walter determined that no member, no plaintiff fell into any of those classes, either 6 or 7. With regard to class 6, he did not even address it in his ruling that Ms. McGregor actually called Oberon to cancel her membership. Further, we were not, because of the shortness of time, the 90 days from the filing, to file the class, we were not able to do any sort of class punitive discovery to make any determinations of whether there was an adequate or typical class member out there. I'll reserve the balance for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, Richard Kendall on behalf of Oberon. Your Honor, I'll just start with Ms. McGregor. She did not seek to be a representative of either class 6 or 7. Her declaration appears in the excerpt of record at 192, and in paragraph 7 of her declaration, she identifies which classes she seeks to represent, and neither one of them is class 6 or class 7. Now, going to the New York general business law issue, counsel discussed various facts, but ignored the case law. The case law in New York, which is principally the Goshen case decided by the highest court in New York, was an Internet case, and it was an Internet case in which there were New York connections, but the court found that despite the fact that there were two things, the hatching of a scheme and a marketing campaign in New York is not intended, as the court said, to police out-of-state transactions of New York-based companies. And the district court was certainly not outside the New York law, and I submit there is no basis for finding that there was any clear error here in the factual findings that the court made. The Goshen was the defendant based in New York? Yes. So the same as Oberon? Oberon being based in New York? Yes, sir. Oberon was based in New York? The court in Goshen said that the defendants were Delaware corporations with principal places of business in New York and Virginia, and Oberon is based in New York. With respect to the Goshen case, there's no law that affects an Internet transaction? No. No state law? No, there are state laws that affect it. So what you need to look at in- You have a California subscriber on a company that's based in New York and creates a web page in New York, and does its operations in New York, and arranges its payments in New York. What law governs? Well, the Goshen case would say that New York's law doesn't, but California, for example, has quite robust consumer protection laws, and so the consumer would certainly have the protection of the California law. But all the deception allegedly takes place in New York at corporate headquarters. The deception, such as alleged, actually occurs not in New York, but in the communication between these consumers who are located in different states and servers or websites that are located in various places that are not in New York, because keep in mind that Oberon- Cyprus? No. No, Your Honor. I'm going to move to the foreign transaction fee in a minute. I don't care about the foreign transaction fee for here, but somebody's got to be able to regulate. It has to be jurisdiction somewhere, otherwise you have a lawless transaction. No, Your Honor, I don't think that's right. Wait a minute. The location of the subscriber- Of the consumer. Every single state. There have to be subscribers in every single state. And that's right, Your Honor, under the law of New York with respect to Section 349, because as the Goshen court said, General Business Law 349 is not intended to police the out-of-state transactions of New York companies. So the highest court of the state of New York has decided that that is how that law is to be interpreted. The cases that have been cited by my opponent are either lower court cases that were overruled by Goshen or are Attorney General cases in the state of New York. And the reason I bring that up, Your Honor, is the New York Attorney General could regulate, even though private plaintiffs don't have a cause of action under Section 349 under New York law, but the New York Attorney General, if he thought that the interest of the state of New York warranted an investigation or a prosecution under Section 349, would have jurisdiction to do it. What agreements that might be relevant do we have between Oberon and any of the users as to what law applies? As to the users who signed up and entered into the contract, then there is a New York choice of law clause. So what that means is that New York law, with respect to the Section 349 issue, meaning Goshen and how it is interpreted, the General Business Law of New York would apply. Now, why does it necessarily require that interpretation? Meaning, you can have parties, one in California and one in Nevada, to try and figure out what law they want to apply. And they say, well, we're going to apply Illinois law because we're not comfortable with the law of either form. And then we just look to the contractors, what they agreed to, and not whether or not Illinois law of its own force applies extraterritorially. And if it were that easy, then I probably never have to argue in the commercial cases that I stand before this Court from time to time arguing about choice of law. But as we all know, and as a professor of civil procedure would say, choice of law can be quite complicated. So, for example, in California, there is a doctrine I'm sure the Court is familiar with where if the fundamental policies of California are sufficiently implicated, a choice of law clause will be trumped. And that's frequently invoked in consumer protection cases of various types. But that's not the argument you're now making. You're not saying that California law is so much more protective than New York law that we have to disregard the contract of the parties. So what is your argument as to why we should disregard the contract of the parties? I am not arguing that you should disregard the contract of the parties. What I am saying So what does the contract of the parties mean? I think it's susceptible to interpretation that any dispute arising out of this will be governed by New York law. And with respect to New York law, Your Honor, the law in New York is clear under the that it will not apply to a transaction. But you're not taking my point. I think it is perfectly available to two competent parties to agree that the law of some jurisdiction will cover, even if the law of that jurisdiction will not of its own force cover the transaction. They're just agreeing to the rules by which their transaction will be governed. That would be true of the common law, Your Honor, but not of statutory law. They could no more agree that the California business law would apply than they could add other provisions and say we're going to ignore the difference between private parties and attorneys generals standing to prosecute. I just think you're wrong. The parties can agree what law will govern their transaction. And that agreement is binding even if the statutory law of whatever jurisdiction it is independently considered would not govern the transaction. The parties have agreed that it will govern the transaction. I agree, Your Honor, but I think when they agree on New York law, they import New York law with all of its bells and whistles, whatever. And where in the contract does it say that? It is to say we incorporate New York law only to the extent that New York law would govern of its own force. Well, I submit, Your Honor, that If that's what they mean, they don't need to sign the contract that says New York law governs. I submit, Your Honor, that when you have a choice of law clause that chooses a particular law, that you are buying into the entire jurisprudence of that jurisdiction. And New York law as it applies to choice of law clauses and New York law as its statute is interpreted. Let me ask you the question this way. What if the parties were to agree, and I'm not making this explicit in a way that I think is not explicit here. If the parties were to agree, we agree that the law of New York will govern this transaction irrespective to the territorial application of New York law independently considered. Are the parties capable of entering into that contract such that New York rules will now govern? I would argue no with respect to Section 349 because I don't think. I'm not asking you. I'm asking you a general proposition and then we can get down to brass tacks. Okay. As a general proposition as to the common law and as to statutes that do not actually specifically limit the reach of New York law, then I think the parties are free to contract to say, for example, that New York negligence law will apply even though. You see, I think we may just have to agree to disagree on this point. And I don't want to detain you too long on that one. Okay. Let me ask you. It seems to me of the various classes, the strongest argument for certification is with respect to the foreign transaction fee. And the argument is the wording was different but it was never disclosed. One could infer from the fact that it's going to go across the border. One can infer from the disclosure that a non-U.S. bank is going to be used that maybe there's going to be a foreign transaction fee. But the argument is that is not disclosure. Why is that not a certifiable class? Not yet in getting to the merits as to whether or not that was adequate disclosure, but why is that not an adequate class? Several reasons, Your Honor. First of all, there are various elements of a non-disclosure type of tort, and one of them is materiality. So in order to know whether customers would have purchased the games anyway, some may have had the disclosures and understood that a cross-border transaction is a cross-border transaction with a fee, and some may not. But they may have purchased anyway, and we don't know anything about why particular consumers decided to go ahead and purchase. Now, to compound that problem, the foreign transaction fee is not charged by Oberon. It's charged by a credit card company. Oberon doesn't receive any benefit from this foreign transaction fee at all. And the foreign transaction... That's an interesting thing to say. It may be that they don't get that money, but why are they sending this through Cyprus if there's no benefit to doing that rather than sending it through, I don't know, North Dakota? That's a very good question, and they don't anymore. But it's an anachronism, or was an anachronism, because the company began as a company in Israel. So they were first headquartered in Israel, and then they moved to New York. And when they were headquartered in Israel, they cleared through Cyprus. And so it was just vestigial that that's how they operated. And then, of course, it's a contract matter not between them and the consumers, but between the credit card issuing bank. It depends on which credit card company you're looking at. But as the Rosenrauch Declaration, which appears at an excerpt of record, I mean, actually a supplemental excerpt of record 11 to 13 makes clear, there are contracts between the consumer and each of the different credit card companies. And they all have different policies about charging these fees. And the disclosures, which are mandated by federal law under the Truth in Lending Act, are the disclosures that are made by the credit card company to the individual consumer. The relevant disclosure... Robert knows that the subscription will go through a foreign country. Well, that's where we get to the judge's findings here. So the judge found that, and of course it was supported by evidence in the record, that Oberon had disclosed on several different websites, because remember it sells its games through different websites, and they all have different disclosure language, that the transactions were processed through a foreign entity in Nicosia, Cyprus. And at various websites it was said that the transactions may be processed through a non-U.S. bank and that certain credit companies may deem the purchase a cross-border transaction. So there was a disclosure of the location of the transaction, but not the consequence of that, which is a consequence that's enclosed not by Oberon, but by... On certification, the judge should only be doing things that... He's taking plausible transactions on their face. He's not supposed to be making merits determinations, and this sounds very much like a merits determination. Well, I respectfully disagree, Your Honor. I think what the judge has to do in the finding is make a determination as to each of the factors in Rule 23, because the judge is effectively being a gatekeeper here. And so the question... Are there common questions? And so that was the critical point here. And then it's also the case, going back to the disagreement that I had earlier... The customer knows because it's part of his agreement with his credit card company that he has to pay a fee. That's right, Your Honor. And the fee varies from one customer to another. And some companies don't require a fee. For example, American Express embedded it, and others require fees, and there are different types. That's right, and that is...  Exactly, Your Honor. If the Court has further questions for me, I'm happy to answer them. Otherwise, I know it's been a long calendar, and I won't belabor. Your Honor, just briefly on two points. The Goshen case dealt with a Florida insurance broker, and as the Court also pointed out, the Goshen case did not have a terms and conditions policy between customer and company that says... I haven't read Goshen, but it's very hard for me to believe that the New York courts would not accept jurisdiction under its general fraud statute if a company based in New York, getting paid in New York, and doing these transactions from New York is committing fraud and is sued. It's nice to know that you visited. Welcome. With regard to the foreign... Strong jurisdiction. Yes, you are. With regard to the foreign transaction fee, Your Honor also made the correct point that this is not a time, at the point of certification, to determine whether something is meritorious. Yeah, but on the common questions, it's a good point. If everybody's in a different situation, where's the commonality? Everybody is the same question. No one was disclosed that there is a foreign transaction fee associated with cross-border transactions. There's a foreign transaction fee associated with transactions in Cyprus. You are also correct that there are benefits to banking in Cyprus, some of which we can speculate are it's offshore. But the benefit goes to the company and is to the detriment. But now you're doing what you said we shouldn't do, and I agree we shouldn't do. You're getting into the merits. What we're interested in is the commonality, and one of the arguments made as to the foreign transaction fee and commonality was, well, it's going to vary depending upon the cardholder and the conditions of the card. So assuming for the moment that there was a failure to disclose, that should have been done. Okay, I was assuming that for the purpose of the question. If I got an American Express card, there's going to be one consequence. If I've got a Visa card, there's another consequence. If I've got a Visa Platinum, there's another consequence. So that argument is, well, you don't have commonality because the consequences for the different cardholders will be different. How do you respond to that? For one, Your Honor, I respond by saying that there is no evidence whatsoever in the record of the fact that some cardholders or some banks or some credit cards will charge where others will not. The evidence that the district court relied on is that websites have different wording in them. That was the evidence that was submitted by Oberon, and that was the evidence that the district court relied on, that being some websites say, but with regard to who is damaged, who suffers the foreign transaction fee, that's, again, not a common question of fact. The who suffered from the overall policy of failure to disclose is not at this stage of certification. This stage of certification is, is it common to all of the people of the GameSaver members that they were not disclosed that there may be a foreign transaction fee. Who actually suffered the foreign transaction fee has to, because of who owned American Express versus another company, is to be determined later in the process of class action. If we were to have to know which employees worked overtime and which employees didn't at the beginning of a wage and hour class action, it would be impossible. And in similar situations here, it's impossible for us to know now which parties, but we can send a notice to everyone, and we can ask them. If someone in the class doesn't respond, how do you know which class he's in? With regard to the foreign transaction fee, if they do not. He simply doesn't respond. You send out notices to 10,000 people, you get 9,000, you get maybe 500 responses, I'm excluded, and everybody else is silent. How do you know which class they're in? Well, it would depend on which class we're trying to certify, Your Honor. If we're trying to certify... Try to certify them all. All seven classes. Well, each of them would have different answers. With regard to the failure to renew, they would be certified if they actually went beyond their subscription. How do you know? The person is silent. Remember, the class is silent. With regard to... He can be throwing out your notice. Many people do. Yet he's in the class. Oberon has a huge database of information. They know exactly which class members went over their subscription and which didn't. They have databases of information that trace... The Mac one. Yes. On a class notice, you have absolutely no information if a person doesn't do anything. With regard to where he is, you might as well have one class rather than seven, and yet by having seven classes, you've in effect conceded that there are no common questions of law of fact that pervade all seven. You have an impossibility, and I can't say, just speaking for myself, that the district judge abused his discretion in coming up with this monstrosity. If I were on this appeal, if I were on this class, I'd be scratching my head to figure out how to administer it. Well, with regard to a one particular... Let's suppose the company says, I want to settle. I don't want to fight this. I don't have any money to fight this. I want to settle. I want to settle fast and makes an offer. How would you know how to distribute the money? We would distribute amounts, for example, for the foreign transaction fee, X amount for each GameSaver member. We would distribute for any member that went beyond... Including people who said, I wasn't deceived. I knew there would be a foreign transaction fee. Every time I do a cross-border transaction, I'm charged. I don't like it, but I'm charged. The deception isn't the point. It's the failure to disclose. This class is impossible. Your Honor, that's why we're allowed to do discovery to make a determination of which class members are in fact damaged and which aren't. And upon doing further discovery, we would know the damage for each individual. But that's way beyond. At this point, the GameSaver members are the commonality. The purpose of early certification is to fix your classes before you do the discovery on the merits. And you can't do it. In summary, Your Honor, I would say that just because there are seven classes should not be a reason to not certify any one class. And if there's an ability to determine which GameSaver members are ascertainable in any one particular class, that should be sufficient to certify at least one of the seven classes. Thank you for your time.
judges: Hellerstein, Farris, Fletcher